IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**LA TIDTUS JONES**                                                                         **PLAINTIFF**

**v.**                                                        **No. 2:12CV151-NBB-DAS**

**JAMES MOORE, ET AL.**                                                     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of La Tidtus Jones, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have moved [56] for summary judgment. Jones has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the motion [56] by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v.*

*Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Jones' Allegations

La Tidtus Jones alleges that the defendants used excessive force against him when moving him from one pod of the Bolivar County Regional Correctional Facility by beating him severely, then using a Taser on him. He also claims that the defendants denied him medical attention for the injuries he sustained in the alleged attack. He also alleges that the defendants used force against him in retaliation for two lawsuits Jones had previously filed. Finally, Jones alleges that the defendants

denied his right to due process by failing to prosecute the prison guard defendants for allegedly using excessive force.

## Undisputed Material Facts

The relevant facts in this case are not genuinely in dispute. La Tidtus Jones was convicted of robbery and is serving a twenty-five year sentence with the Mississippi Department of Corrections. While serving this sentence, he was temporarily housed at the Bolivar County Regional Correctional Facility. Jones alleges that, on July 16, 2012, he was housed in pod "C-2" of the jail. His bunk was near an air conditioning vent, and he put a towel over the vent to block the cold air from blowing on him. When Defendant Stanley Douglas came into the Pod, he removed the towel. After he left, Jones put the towel back over the vent. When Douglas came back into the pod, he saw the towel and told Jones that he was being transferred to another pod, "C-3."

Jones also alleges that Defendants Octavious Harris, Eric Bridgett, Walter Grant, Bradshaw, and an unknown jailor joined Douglas to assist with the transfer. When Jones heard that he was being transferred to C-3, he objected because he had been in an earlier confrontation with another inmate in C-3. The parties disagree as to the level of Jones' resistance, but he admitted in his deposition that he told the jailors refused to enter Pod C-3. In both his complaint and his deposition, Jones testified that the officers beat him severely and caused serious injuries. In his complaint, Jones alleges that defendant Grant struck him in the right side with a flashlight, then in the back with a larger flashlight. When Jones refused to enter the adjacent unit, Grant allegedly knocked Jones to the floor by striking him twice on the right side with a flashlight. Then, according to Jones, defendants Douglas, Harris, Grant, Bradshaw, and Bridgett assaulted him by repeatedly punching, stomping, and kicking him – and striking him with their flashlights. Jones alleges that one of the defendants broke his hand by stomping on it – and that he suffered serious bodily injuries: two elbow sprains, abrasions and bruises all over his body – to his right eye socket, upper and lower lips, the top of his head, ribs on both sides,

his back, and his neck. Indeed, Jones alleges that he suffered brain damage from the severe beating. At this point, defendant Grant deployed a Taser on Jones, which caused both pain and involuntary muscle convulsions. After the Taser was deployed, Jones cooperated and was placed in a single lockdown cell. He was ultimately moved to Pod C-3 without further incident.

As for medical treatment, Jones saw the jail nurse the day after the incident – complaining of swelling in his left ribs, left elbow, head and back. He also complained of chest pain, and contusions on his forehead and the back of his head. The nurse noted that Jones was "involved in a take down with officers this morning with tazer." However, she found no significant injury and prescribed ibuprofen. She recorded her findings in a report the defendants attached to their motion for summary judgment. The nurse also saw Jones a day later and treated him. This time he complained only of high blood pressure, right eye pain, and left elbow pain. The defendants also provided this second report in support of their motion for summary judgment. The report shows that Jones suffered no serious injury. Jones' head, eyes, ears, nose, and throat were normal. His extraocular muscles were intact. His heart had regular rate and rhythm. His lungs were normal. His abdomen was normal. His pupils were normal. The nurse diagnosed Jones with a contusion to his right eye – and as having high blood pressure. She prescribed ice packs to his right eye for ten minutes, four times per day, 800 milligrams of ibuprofen, suggested that Jones continue taking his high blood pressure medicine, and recommended a low-salt diet.

Jones claims that as result of the jailors' actions he filed federal criminal charges against the individual defendants. He is currently housed at the South Mississippi Correctional Facility and is not receiving any medical treatment for injuries he allegedly suffered in this case.

### Defendants Eddie Williams, Donny Whitten, James McBride, Richard Coleman, Pete Roncalt, and Will Hooker: No Involvement in the Incident.

The only connection defendants Eddie Williams, Donny Whitten, James McBride, Richard Coleman, Pete Roncalt, and Will Hooker have to this case is that they are members of the Bolivar

County Board of Supervisors, or, in the case of Will Hooker, the Bolivar County Administrator. None of these defendants works at the jail, and none were in any way involved in the incident at issue in this case. In addition, none of the men plays the slightest role in setting jail policy, as that is the province of the Sheriff. *Brooks v. George County, Mississippi*, 84 F.3d 157, 165 (5th Cir. 1996). As such, Jones' claims against these defendants are frivolous. *See Cunningham v. Hinds Co. Sheriff's Dept.*, 3:12CV634-CWR-FKB (S.D. Miss., November 1, 2012) (conditions of confinement claims against Board of Supervisors and County Clerk dismissed as patently frivolous). The plaintiff's claims against these defendants will thus be dismissed as frivolous.

### Defendants Bolivar County Sheriff Kelvin Williams and Former Jail Administrator James Moore: No Personal Involvement in Incident

Jones' allegations against defendants Sheriff Kelvin Williams and Former Jail Administrator James Moore arise solely from their positions of authority over the other jail personnel. Section 1983 liability cannot, however, be predicated upon a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For Jones to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, Jones does not allege that either Williams or Moore had any personal involvement or were causally connected to the alleged incident in any way. As such, Jones' claims against defendants Williams and Moore will be dismissed for failure to state a constitutional question.

To the extent that Jones seeks to hold either of these defendants liable in their official capacities, such a claim is simply one against the County, which can only be liable if the incident in question arose out of an unconstitutional County policy. *Palmer v. City of Antonio, Texas*, 810 F.2d 514, 516 (5th Cir. 1987). As Jones has neither alleged nor proved such a policy exists, this claim will also be dismissed for failure to state a claim upon which relief could be granted.

### Defendants Stanley Douglas, Octavious Harris, Eric Bridgett, Walter Grant, Bradshaw, Brandon Clemmons, and Anderson Jones

Jones alleges that defendants Stanley Douglas, Octavious Harris, Eric Bridgett, Walter Grant, Bradshaw, Brandon Clemmons, and Anderson Jones used excessive force against him when moving him from Pod C-2 to C-3. He also alleges that these defendants denied him medical treatment for injuries allegedly sustained during the incident. Jones' bare allegations are wholly refuted by the summary judgment evidence the defendants have submitted. The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the very purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

In this case, Jones alleges that five to seven grown men knocked him to the ground with two blows from a flashlight; then, while he lay on the ground, pummeled him all over his head and body with their fists and large flashlights, then repeatedly kicked him and stomped him. According to Jones, this savage beating left him with the following serious injuries: two elbow sprains, abrasions and bruises all over his body – to his right eye socket, upper and lower lips, the top of his head, ribs on both sides, his back, and his neck – and brain damage. Such a beating, if it occurred, would result in severe – potentially fatal – injuries.

The nurse's medical reports, however, paint an entirely different, far more benign, picture. The day after the alleged beating, the nurse examined Jones, treated him with ibuprofen, and sent him on his way. Jones returned the next day (two days after the incident) – complaining only of high blood pressure, pain in his right eye and left elbow. He did not mention a broken hand, brain damage, or any kind of severe injury that a layman with common sense would expect to result from the severe beating Jones described in his complaint and his deposition. The nurse performed a routine examination, found everything normal, and diagnosed Jones with a contusion (bruise) on his right eye and high blood pressure. She treated him with ice packs for the eye and ibuprofen; she also

recommended that he continue the high blood pressure medication regimen he was currently following – and that he switch to a low-salt diet.

The nurse's objective findings (a bruise above Jones' right eye and high blood pressure) stand in stark contrast to Jones' allegations (a severe beating resulting in broken bones and brain damage). The findings are, however, entirely consistent with the normal takedown of an inmate refusing to comply with an officer's order. Indeed, Jones' allegations regarding his compliance are not even internally consistent. He repeatedly states that he was compliant with the officers' orders, but he readily admits multiple times that he refused to enter Pod C-3 as the officers ordered him to do. Jones, by his own admission, refused to enter the pod after repeated orders. Jones' account of the events in this case is simply "not supportable in the record," and the court cannot draw inferences in favor of Jones based upon that account. *See Scott v. Harris*, 550 U.S. 372, 381 (2007).

As Jones' account of the takedown incident is not supported in the record, the court must determine whether the amount of force applied (as documented by objective evidence in the record) was excessive. The court finds that it was not. Courts must balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order. As such, to establish liability on the part of defendants a plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993).

In this case, if Jones would not willingly enter the pod, then the officers had to use some amount of force to ensure that he did so. The objective proof in the record can be found in the various documents that prison staff and medical personnel drafter during the normal course of business: the Incident Reports, Use of Force Reports, Rule Violation Reports, and medical reports. The reports of

the prison staff and the nurse are entirely consistent. The use of force the officers describe in their reports matches the very minor injury Jones suffered (a bruise above his eye) – as documented in the medical reports.

The events described below are not in dispute. Jones refused to obey an officer's order (to stop blocking the air vent) – and refused to obey another order (to pack his belongings and move to another pod). When Jones would not enter Pod C-3 of his own volition, Lt. Douglas decided to have other officers provide assistance in moving Jones. Given Jones' refusal to enter the pod, the officers had to use force to either gain his compliance (so that he would move voluntarily to the pod) – or to physically move him to the pod. The officers chose to use force to gain Jones' compliance. After several warnings, the officers took Jones down. Jones alleges that during this encounter, he did not resist the officers; however, he also alleges that he would not voluntarily enter Pod C-3. Thus, at a minimum, he refused to enter the pod under his own power. As Jones still would not comply with the officers' orders, one deployed his Taser by direct contact (without the darts) to Jones' torso. Jones then entered Pod C-3. The officers' actions were clearly a good-faith effort to maintain or restore discipline – not malicious and sadistic acts designed to cause harm. In addition, Jones' injury (a bruise above his eye) was *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (a sore, bruised ear, lasting for three days, was a *de minimis* injury). For these reasons, judgment will be entered for the defendants as to the plaintiff's claim regarding use of excessive force.

### No Evidence of Retaliation

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of

that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir.2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Jones must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences (use of excessive force), and that such action was taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

Jones has not met that standard in this case. He mentions two federal lawsuits he had filed before the incident, and he alleges that the officers in the present suit retaliated against him because he had filed the earlier suits: *Jones v. Clerk Marily L. Kelly, et al.*, 2:12CV125-MPM-DAS (N.D. Miss.), and *Jones v. City of Rosedale*, 2:12CV32-SA-JMV (N.D. Miss.) However, none of the prison guards Jones accuses of using excessive force in the present case was a defendant in either of the previous

suits. Jones alleges that Stanley Douglas said that he would compel Jones to obey his orders, despite Jones' reputation as an inmate who files many suits and grievances. This statement does not, however, suggest retaliation as a motive, as much as Douglas' desire to do his job, despite the Jones' threat of grievances and suits. By his own admission, Jones repeatedly refused to obey the orders of prison staff and refused to relocate to another pod in the prison – prompting prison staff to use a reasonable amount of force to gain his compliance. Jones has provided no more than his personal belief that he is a victim of retaliation, which is insufficient to sustain a claim under 42 U.S.C. § 1983; judgment will be entered for the defendants as to this allegation, as well.

### Three Strikes

In addition to the reasons set forth above, the court notes that Jones has accumulated three "strikes" under the Prison Litigation Reform Act. ("PLRA"). *See* 28 U.S.C. § 1915(g). The *pro se* prisoner plaintiff, an inmate in the custody of the Mississippi Department of Corrections, has submitted a complaint challenging the conditions of his confinement under 42 U.S.C. § 1983.

Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Jones has accumulated "strikes" under 28 U.S.C. § 1915(g) in the following cases: *Jones v. City of Rosedale*, 2:12CV32-SA-JMV (N.D. Miss.) (December 12, 2012 order dismissing case for failure to state a claim); *Jones v. City of Rosedale*, No. 13-60028 (5th Cir. Judgment of December 16, 2013), and *Jones v. Clerk Marily L. Kelly*, 2:12CV125-MPM-DAS (N.D. Miss.) (August 27, 2014 order dismissing case for failure to state a claim).

In addition, Jones has alleged in this case that he received a vicious beating at the hands of the defendant prison guards at the Bolivar County Regional Correctional Facility – a beating leaving him

with broken ribs, a broken hand, other broken bones, abrasions and contusions all over his body, and brain damage. As the nurse who examined him on two occasions within two days of the incident found no serious injury – and treated him for a single bruise and high blood pressure – the court finds that malice motivated Jones to file the instant suit. The incident simply could not have occurred as Jones has described. As such, the instant dismissal will also count as a "strike" under the PLRA – Jones' *fourth*. As Jones has now "struck out" under the PLRA, he will no longer be permitted to proceed *in forma pauperis* in any federal suits he chooses to pursue under 42 U.S.C. § 1983.

## Conclusion

In sum, the motion [56] by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects. In addition, the dismissal of this case will count as a "strike" under the Prison Litigation Reform Act. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 7th day of October, 2014.

/s/ Neal Biggers  
NEAL B. BIGGERS  
SENIOR U. S. DISTRICT JUDGE